IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. C-05-636M (2) |
| | § | |
| EMILIO CANTU | § | |

## ORDER

The defendant, Emilio Cantu ("defendant"), is charged with kidnaping pursuant to 18 U.S.C. §§ 1201, 1203. (D.E. 1). At the initial appearance, the Government made a motion to detain the defendant pending trial pursuant to 18 U.S.C. 3142. (D.E. 2, 3).

After a detention hearing, the below-signed magistrate judge issued conditions of bond for the defendant.[1] Pending are the Government's motion for a Nebbia hearing, (D.E. 4), and a motion for a stay of the release of the defendant pending review of the order for release, (D.E. 5).

## FACTUAL BACKGROUND

On about October 8, 2005, Henry Haberzettle was reported kidnapped to the Nueces County Sheriff's Department. Mr. Haberzettle had been taken to Mexico and a ransom demand of $200,000 was made to Kevin Henske.

---

[1] The co-defendant, Carlos Vazquez, Jr. ("co-defendant"), was denied a bond at his detention hearing.

Special agents with the Corpus Christi office of the FBI were contacted regarding the kidnapping. Based on information that they received, they began surveillance of the residence of the co-defendant in Corpus Christi, Texas.

The FBI arranged a payoff of the ransom demand in the parking lot of the Wal-Mart in Calallen. This pay-off was arranged for October 13, 2005. The prior evening, FBI surveillance placed the defendant at the co-defendant's home. Moreover, immediately prior to the meeting with Mr. Henske to make the pay-off, the defendant and the co-defendant left the co-defendant's home and traveled in separate vehicles to the Calallen meeting site.

The co-defendant met with Mr. Henske in a restaurant and took the ransom money. He was arrested as he left the meeting.

During the meeting, the defendant was driving around the parking lot in a manner consistent with a person serving as a lookout. Although the evidence is that the defendant does not know Mr. Henske, he had Mr. Henske's telephone number in his personal cell phone that was in his possession. Additionally, the defendant had a firearm and a police scanner in his vehicle. He was arrested shortly after his co-defendant's arrest at a gas station.

The attorney for the Government candidly admitted that this was "not an easy case to look at," that "all this is a very difficult situation to pull together," and that

"it's difficult, but there's probably cause to believe this" in her argument regarding the preliminary examination. She made similar statements during the argument regarding whether a bond was appropriate for the defendant. Nonetheless, the below-signed magistrate judge found there was probable cause to believe that both defendants had committed the offense with which they are charged. See 18 U.S.C. § 3060.

During the defendant's bond hearing, there was a couple of hours of testimony from four witnesses: the FBI case agent, the defendant's nephew, his step-daughter, and his wife.

Based on the testimony and evidence, the below-signed magistrate judge set the following bond conditions:

(1) must have viable co-surety approved by Pretrial Services;

(2) must be under pretrial supervision in McAllen, Texas;

(3) must live with wife, who is to serve as third-party custodian of defendant;

(4) must have additional third party custodian, to be selected from persons identified in letters admitted into evidence at detention hearing;

(5) must surrender any passport, and obtain no new passport, while under supervision;

(6) must refrain from possessing any firearms, explosives, destructive device, or other dangerous weapons;[2]

(7) must maintain or actively seek employment and provide proof to Pretrial Services;

(8) travel is restricted to Starr and Hidalgo Counties with permission to travel to Corpus Christi, Texas for court appearances and attorney meetings;

(9) must avoid all contact, directly or indirectly, with any persons who are or may become a victim or potential witness in the subject investigation or prosecution, including but not limited to, the co-defendant in this case;

(10) must refrain from use or unlawful possession of a narcotic drug, or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner;

(11) must submit to any method of testing required by Pretrial Services for determining wether the defendant is using a prohibited substance;

(12) must participate in a program of inpatient or outpatient substance abuse therapy and counseling if deemed necessary by Pretrial Services;

---

[2] Regarding this condition, the below-signed magistrate judge indicated that Pretrial Services must specifically verify that all firearms are removed from the defendant's dwelling.

(13) must participate in a home detention program which includes electronic monitoring and GPS tracking, at the discretion of Pretrial Services;

(14) must maintain a landline home telephone number and provide such telephone number to Pretrial Services, and notify them immediately if the telephone number should change; and

(15) must incur the costs associated with maintaining the conditions of bond based on the ability to pay as determined by Pretrial Services.

These conditions were narrowly tailored in this case so as to both reasonably assure the defendant's appearance for subsequent criminal proceedings, as well as assuring the safety of the community. See 18 U.S.C. § 3142(c)(1)(B); see also United States v. McConnell, 842 F.2d 105, 108 (5th Cir. 1988) ("The bail conditions are triggered by two considerations: reasonable assurance of the appearance of the defendant and the safety of other persons and the community in general.").

The below-signed magistrate judge considered a number of factors in reaching the decision to set the bond conditions. First, while a finding of probable cause was made, the weight of the evidence against the defendant is largely circumstantial. He had a weapon in his car, but he also had a valid permit for the weapon. Moreover, he had a police scanner. His nephew, an investigator for the

Starr County Sheriff, testified that he had the police scanner for years and that he had used it to follow what the nephew was doing. Although Mr. Henske's telephone number was in the defendant's cell phone, it is the defense's argument that the defendant did not put it there. The below-signed magistrate judge does not find this argument overwhelming by convincing evidence, but a jury might find it plausible. Overall, the weight of the evidence against the defendant is not the strongest of cases. See 18 U.S.C. § 3142(g)(2). This is a factor that must be considered during the determination of a bond and in this case, the Government has not furnished much by way of this factor. See United States v. Jackson, 845 F.2d 1262, 1266 (5th Cir. 1988).

Second, the nature and circumstances of the crimes charged are extremely serious. The defendant's role as alleged by the Government is minor: the lookout for the ransom pick-up. There is no evidence the defendant was involved with the abduction. Moreover, the evidence is not the strongest, and is circumstantial. Therefore, the below-signed magistrate judge finds that while the nature and circumstances of the charge are serious, they do not weigh heavily in favor of detention. See 18 U.S.C. § 3142(g)(1).

Indeed, the attorney for the Government repeatedly acknowledged that this was a difficult case during the argument regarding probable cause. Then, during

6

the argument regarding the defendant's detention hearing, the position has become that the case is one in which a bond must certainly be denied. There is a tension between these two positions.

Third, the defendant's personal history and character must be considered. As an initial matter, the defendant, at the time of his arrest, had no other pending criminal matters. See 18 U.S.C. § 3142(g)(3)(B). Indeed, it is undisputed that he has no criminal history.

There are a number of other factors related to the defendant's character. He has strong family ties. The defendant has taken an active role in raising three daughters he has with his wife. Indeed, he served as their primary caretaker. Moreover, he raised and provided for his step-daughter as if she were his own daughter. When his father was sick and dying of Parkinson's, he resigned his position with the Post Office so that he could care for him. See Exs. 23-26.[3]

Despite his resignation form the Post Office after several years of service, the defendant is employed. He is self-employed as a rodeo promoter, which provides approximately $5,000 per month income. Furthermore, he owns several head of cattle, as well as rental property, that constitute both financial resources and additional sources of income.

---

[3] References to exhibits are to those that were admitted during the defendant's detention hearing.

The defendant has spent most of his life in the Rio Grande City area. More important, he has strong community ties, having performed numerous civic duties. He serves as the school's president. In the past, he has also conducted fundraisers so that he could take disadvantaged children on field trips around Texas. He has further made his ranch, including the horses, available to kids who otherwise, would not have such exposure. There was also testimony that he is active with his church.

One factor that weighed against the defendant is his history of drug use. This usage, however, seemed to be in the past. Moreover, one condition of bond was random drug testing, as well as drug counseling, if deemed necessary.

Fourth, the below-signed magistrate judge considered the nature and seriousness of the danger to any person or the community posed by the defendant. See 18 U.S.C. § 3142(g)(4). Clearly, the charge of kidnapping indicates the potential for some danger to the community.

On the other hand, in this case, the defendant has support from his community. Indeed, four leaders within that community wrote letters on his behalf. Admittedly, three letters are relatively bland in tone and substance. Nonetheless, these three people thought enough of the defendant to write the letters. See Exs. 3-5. The fourth letter was by Kevin Hiles, the mayor of Rio Grande City. He

specifically indicated that he did not believe that the defendant posed a danger to the community: "Mr. Emilio Cantu is a strong family man who has to my knowledge always put his loved ones first and has deep ties to the community. I do not feel that Mr. Emilio Cantu is a danger to his community and he being released on bail would jeopardize the well being of person or property." Ex. 2.

During argument, defense counsel indicates that it was the family's belief that these four individuals would be willing to serve as a third-party custodian. One of the bond conditions is that one of the individuals serve in such a capacity. The mayor's statement, coupled with the willingness of such a third-party custodian, indicates that despite the seriousness of the underlying charge, this defendant does not represent a danger to the community.

One telling story of why the community values the defendant beyond the above-discussed civic and charitable deeds, is the rescue he undertook of three children. While still working for the Post Office, the defendant came across a fire in a mobile home on his mail route. The mother had escaped, but her three children were still trapped inside the fire. No one would help the mother, but the defendant, risking his own personal safety and well-being, went into the mobile home and saved the three kids. See Ex. 27 (newspaper clipping praising defendant as their hero). This factual finding, along with most of those previously discussed,

was uncontested by the Government.

In its argument for detention of the defendant, the Government focuses on the nature of the underlying offense. As the Fifth Circuit has established "[t]he charging instrument and the government's evidence will provide information concerning the factors," at least in part, to be considered for purposes of whether bond is appropriate. United States v. Parker, 848 F.2d 61, 62 (5th Cir. 1988) (per curiam). Furthermore, "a defendant may focus his evidence on other factors that are unrelated to the alleged offense, such as his character, employment history, family status, and community ties." Id. at 63.

The Government also attempts to argue that the defendant has a sinister double life in which he carouses and cavorts with felons and gang members. Its allegation may be true, but it is wholly unsubstantiated based on the evidence presented by the Government at the defendant's detention hearing. See Jackson, 845 F.2d at 1265 (determination of bond conditions must be made on the evidence presented).

Clearly, the co-defendant is a friend of the defendant and someone who had been previously convicted of felonies. Beyond that fact, there is not much factually to its allegations. The Government presented testimony that the defendant requested to be placed in cells with members of the Texas Syndicate. The same FBI

agent who offered this testimony in the morning, retracted it as untrue in the afternoon. Instead, he stated that the defendant was a friend and wanted him to be placed in a cell with its gang. The undersigned magistrate judge does not find these allegations credible. It is not that the agent is uncredible, but that he his forced to rely on unreliable second and third hand sources. Indeed, the Government's allegation is not based on any evidence that the defendant knew this gang member beyond some unknown gang member who quite likely, has his own agenda. Yes, the Government presents a salacious tale that may be true, but one that is unsupported on the evidence and testimony presented at the hearing.

## **DISCUSSION**

The Government's motion for a Nebbia hearing states a concern about whether "the proposed collateral will reasonably assure the appearance of the person as required." (D.E. 4, at 1). A judicial officer may "conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(g)(4); see also United States v. Nebbia, 357 F.2d 303 (2d Cir. 1966).

While the defendant has discussed a rental property that he owns as collateral

for his bond, see Exs. 7-20, that property is only appraised at $96,000. Exs. 11, 20. Any collateral properties would have to total $200,000. At this time, the Government's motion for a Nebbia hearing, (D.E. 4), is premature.

Next, the Government seeks a stay of the release of the defendant pending review of the order for release. (D.E. 5). It further indicates that "[t]he government will file a **MOTION FOR REVIEW AND REVOCATION OF ORDER OF RELEASE PURSUANT TO 18 U.S.C. § 3145(a)(1) by October 21, 2005**. (D.E. 5, at 1).

When a party challenges a magistrate judge's detention order, the district court conducts a de novo determination. 18 U.S.C. § 3145(a)(1); United States v. Fortna, 769 F.2d 243, 249 (5th Cir. 1985). Again, the Government's motion may be premature because there is no indication that the defendant is close to meeting the conditions. Nonetheless, the stay is granted until and through Monday, October 24, 2005, which will enable the Government to file its motion and seek a de novo determination from a district court judge.

ORDERED this 20th day of October 2005.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE